Annette (Oliver) HIRSCH,
Appellant–Petitioner,

v.

Roger Lee OLIVER, Appellee–
Respondent.

No. 29A02–1004–DR–429.

Court of Appeals of Indiana.

March 18, 2011.

Rehearing Denied May 20, 2011.

Trenna S. Parker, Parker & Maguire Law Firm, P.C., Noblesville, IN, Attorney for Appellant.

Eric J. Benner, Richards Boje Pickering Benner & Becker, Noblesville, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Annette (Oliver) Hirsch ("Mother") appeals several rulings by the trial court related to child support from her ex-husband, Roger Lee Oliver ("Father"), for their daughters, Courtney and Elizabeth. We reverse and remand.

### Issues

The restated issues before us are:

I. whether the trial court properly determined the date upon which Courtney was emancipated for child support purposes;

II. whether the trial court properly refused to require Father to contribute anything towards Courtney's post-secondary educational expenses following her emancipation;

III. whether the trial court properly determined that Father did not owe Mother any payments for uninsured medical expenses for Courtney and Elizabeth; and

IV. whether the trial court properly ordered Mother to pay attorney fees and other expenses to Father.

### Facts

Mother and Father were married in 1985, and divorced in 1994. The parties had three children during the marriage: Katherine, born in December 1986; Elizabeth, born in March 1988; and Courtney, born in May 1990. The parties were granted joint legal custody of the children, and Mother was awarded primary physical custody. Katherine was emancipated by court order in April 2005, but with Father being required to contribute toward her

post-secondary educational expenses. In August 2006, the trial court entered another order requiring Father to pay 62.5% and Mother 37.5% of Elizabeth's post-secondary education expenses. The court noted that this order was consistent with its prior orders "with regard to the parents' responsibilities for their children's post-secondary education expenses." App. p. 38. In January 2008, upon Father's motion to modify his child support obligation, the trial court entered an order expressly finding that it cost Mother $42.50 per week to provide health insurance for Elizabeth and Courtney.

On March 3, 2009, Father filed a petition to emancipate Elizabeth. The trial court subsequently declared Elizabeth emancipated as of that date, a ruling which Mother does not challenge in this appeal.[1] During 2009, Elizabeth incurred over $20,000 in uninsured medical expenses. The bulk of that amount, save for a few hundred dollars, was incurred after the date of her emancipation. Mother sought contribution from Father for uninsured medical expenses incurred by Elizabeth and Courtney in 2009.

Courtney, meanwhile, graduated from high school in the spring of 2009. During the summer of 2009, she worked approximately twenty hours per week as a receptionist at a barbershop, earning $7.25 per hour. She also apparently had held the same job during her last two years of high school. Courtney lived primarily with Katherine during the summer of 2009, rather than with Mother. There is no evidence that Courtney paid any rent to Katherine.

In the fall of 2009, Courtney began attending Ivy Tech. She had a scholarship that paid 100% of her tuition. However,

---

**1.** Before the trial court, Mother had argued that Elizabeth was not emancipated, despite

reaching twenty-one years of age, because of incapacity.

approximately two weeks into the semester, Courtney withdrew from all of her classes. She never unenrolled from Ivy Tech, and she signed up for and attended classes in the 2010 spring semester.

On September 23, 2009, upon learning that Courtney had withdrawn from her Ivy Tech classes, Father filed a petition to emancipate her. After withdrawing from her classes, Courtney moved back in with Mother and her stepfather. She also obtained a new job, providing child care at a gym for $8 per hour. This new job overlapped with her previous one for approximately two weeks, and then she worked only at the gym approximately twenty hours per week. There is no evidence that this job provided any employer-paid benefits, such as health insurance.

The trial court held a hearing on Father's petition to emancipate on October 22, 2009. At this hearing, Father testified that Courtney had told him that college "was not for her" and she did not foresee returning. Tr. p. 117. Father also testified, however, that he wanted Courtney to return to college, and that he would "continue to support her" if she did so. *Id.* at 113. Specifically, Father agreed that he was "still willing to contribute for [Courtney's] post-secondary education." *Id.* He also expressly stated that if Courtney returned to college, he was willing to help pay for "books, lab fees, supplies, things like that ...," including parking and "[r]oom and board not to exceed what on campus housing would be...." *Id.* at 28.[2]

The emancipation hearing was not completed in October, and was continued to February 25, 2010. In the meantime, on December 10, 2009, Courtney moved out of Mother's house and began renting an apartment with her boyfriend. At the February 2010 hearing, Mother conceded that Courtney was emancipated for child support purposes as of December 10, 2009, but not any earlier. Mother also continued to seek contribution from Father for Courtney's college expenses. Courtney had begun attending class at Ivy Tech again in January 2010, and was still doing so as of February 25, 2010. She had quit working at the gym, testifying that the stress of both working and attending college had contributed to her earlier decision to withdraw from classes. At the February hearing, in contravention of his October testimony, Father indicated that he did not want to contribute anything toward Courtney's college expenses, based primarily upon his moral disapproval of her moving in with her boyfriend.[3]

On March 19, 2010, the trial court entered an order decreeing that Courtney was emancipated as of the date Father filed his emancipation petition for her, September 23, 2009. The trial court also ruled that Father was not obligated to contribute anything towards Courtney's college expenses. Based upon the emancipation dates of Elizabeth and Courtney, and the fact that Father had continued paying child support after their emancipations, the trial court ordered Mother to repay Father $4,465.75 in overpayment of child support. It also found that Father owed nothing to Mother with respect to Elizabeth and Courtney's 2009 medical expenses. Finally, the trial court ordered Mother to pay $5000.00 in attorney fees to Father, and also ordered her to reimburse Father's current wife $227 for travel expenses associated with traveling from

---

2. The Ivy Tech campus where Courtney was enrolled was a commuter-only campus, with no on-campus housing.

3. Father claimed in February that he could not remember testifying in October that he was willing to contribute to Courtney's college expenses if she returned to school.

Florida to testify at Mother's request. Mother now appeals.

## Analysis

### I. Emancipation

■ We first address Mother's claim that the trial court erred in declaring Courtney emancipated as of September 23, 2009 rather than December 10, 2009. Emancipation of children for whom a parent has been ordered to pay child support is governed by Indiana Code Section 31–16–6–6, which states:

(a) The duty to support a child under this chapter ceases when the child becomes twenty-one (21) years of age unless any of the following conditions occurs:

(1) The child is emancipated before becoming twenty-one (21) years of age. In this case the child support, except for the educational needs outlined in section 2(a)(1) of this chapter, terminates at the time of emancipation, although an order for educational needs may continue in effect until further order of the court.

(2) The child is incapacitated. In this case the child support continues during the incapacity or until further order of the court.

(3) The child:

(A) is at least eighteen (18) years of age;

(B) has not attended a secondary school or postsecondary educational institution for the prior four (4) months and is not enrolled in a secondary school or postsecondary educational institution; and

(C) is or is capable of supporting himself or herself through employment.

In this case the child support terminates upon the court's finding that the conditions prescribed in this subdivision exist. However, if the court finds that the conditions set forth in clauses (A) through (C) are met but that the child is only partially supporting or is capable of only partially supporting himself or herself, the court may order that support be modified instead of terminated.

(b) For purposes of determining if a child is emancipated under subsection (a)(1), if the court finds that the child:

(1) is on active duty in the United States armed services;

(2) has married; or

(3) is not under the care or control of:

(A) either parent; or

(B) an individual or agency approved by the court;

the court shall find the child emancipated and terminate the child support.

■ What constitutes emancipation is a question of law, while whether emancipation has occurred as to a particular child is a question of fact. *Tew v. Tew,* 924 N.E.2d 1262, 1265 (Ind.Ct.App.2010), *trans. denied.* A party seeking emancipation of a child before age twenty-one must establish by competent evidence that emancipation has occurred. *Id.* Specifically, a party seeking to have a child declared emancipated under the criteria of subsection (a)(3) bears the burden of proving the capacity of self-support.[4] *Connell v. Wel-*

---

**4.** This court has stated that subsection (a)(3) of this statute does not technically concern the emancipation of a child, as opposed to termination of child support. *Carpenter v. Carpenter,* 891 N.E.2d 587, 593 (Ind.Ct.App. 2008). Regardless, this is largely a distinc-

tion without a difference, where the only practical consequence of emancipation, as is the case here, is termination of child support obligations. Additionally, the trial court here expressly found Courtney to be emancipated, and neither party argues that it was improper

*ty,* 725 N.E.2d 502, 504–05 (Ind.Ct.App. 2000). For emancipation under subsection (b)(3), there must be evidence both that the child initiated the action putting himself or herself outside the parents' control *and* that the child is in fact self-supporting. *Tew,* 924 N.E.2d at 1267.

■ Generally, when reviewing a trial court's determination regarding the date of emancipation, we will neither reweigh the evidence nor assess the credibility of witnesses, and we will not set aside the finding of the trial court unless it is clearly erroneous. *Connell,* 725 N.E.2d at 504. "We will not reverse unless there is a total lack of supporting evidence or the evidence is undisputed and leads solely to a contrary conclusion." *Id.*

■■ At the outset, we note that unlike an ordinary claim of changed circumstances requiring a modification of child support, a child's emancipation is effective as of the date the emancipation actually occurred rather than as of the date of filing of an emancipation petition. *Donegan v. Donegan,* 605 N.E.2d 132, 133 (Ind. 1992). Where there have been no material changes in the facts and circumstances relevant to the issue of emancipation, a trial court finding that a child was emancipated as of a certain arbitrary date, such as the date the emancipation petition was filed, and not before or after, is clearly erroneous. *Summerville v. Summerville,* 679 N.E.2d 1344, 1346 (Ind.Ct.App.1997). *See also Beckler v. Hart,* 660 N.E.2d 1387, 1389 (Ind.Ct.App.1996). Here, the trial court affixed Courtney's emancipation as of the date Father filed his emancipation petition as to her; there is no indication

that her emancipation actually occurred on that date, as opposed to another date.

Regardless, it is evident that the trial court considered Courtney to be emancipated under subsection (a)(3) of the emancipation statute. Specifically, in its order the trial court stated, "since Courtney has graduated from high school and had not been engaged in any post-high school educational pursuits in which she completed any classes for more than four months subsequent to her graduation from high school, that Courtney is emancipated . . . ." App. p. 55. It also stated that Courtney "had the capacity to work at least two jobs to provide for her own support." *Id.*

■ Mother concedes on appeal that Courtney was emancipated as of December 10, 2009.[5] We conclude the trial court clearly erred in concluding that Courtney was emancipated at any time prior to that date. We observe that "the legislature's intent in enacting the emancipation statute is to require that parents provide protection and support for the welfare of their children until the children reach the specified age or no longer require such care and support." *Dunson v. Dunson,* 769 N.E.2d 1120, 1124 (Ind.2002). Additionally, emancipation of a child cannot be presumed; it must be established by competent evidence produced by the party asserting emancipation. *Sutton v. Sutton,* 773 N.E.2d 289, 293 (Ind.Ct.App.2002).

With respect to Courtney's enrollment at Ivy Tech, subsection (a)(3) of the emancipation statute requires that child not have *"attended* a secondary school or postsecondary educational institution for the

to declare her emancipated as opposed to merely terminating Father's child support obligation.

5. We note that neither a child's employment nor independent living outside of a parent's household necessarily means the child is

emancipated. *See In re Marriage of Brown,* 597 N.E.2d 1297, 1300 (Ind.Ct.App.1992). Nonetheless, given Mother's concession on appeal, we will presume that Courtney was emancipated as of December 10, 2009.

prior four (4) months" and that he or she "is not enrolled in a secondary school or postsecondary educational institution...." (Emphasis added). Thus, the statute requires both (1) a lack of attendance *and* (2) a lack of enrollment at an education institution. *See Tew*, 924 N.E.2d at 1266 (holding that eight-month gap in attending classes between high school and college did not satisfy requirements of subsection (a)(3) where child was in fact enrolled in high school for several of those months). We previously have held that the definition of "enrolled" as used in the emancipation statute "means more than being involved in the application process; rather, it means that one has been accepted to the institution and is officially registered at the institution as a student." *Butrum v. Roman*, 803 N.E.2d 1139, 1145 (Ind.Ct. App.2004), *trans. denied.* The undisputed evidence is that at all relevant times, i.e. within four months of Courtney's graduation from high school and up until December 10, 2009, she was in fact enrolled as a student at Ivy Tech.

■ As for Courtney's failure to complete classes in the fall semester of 2009, and the trial court's finding that she had failed to complete classes, "completion" of classes is not the test under the emancipation statute. The statute requires a failure to "attend," not a failure to "complete," classes. Courtney did attend classes in the fall of 2009 but found herself unable to complete them. The reasons for that failure are, we believe, irrelevant to the question of whether she was emancipated under subsection (a)(3). In sum, we conclude the circumstances here do not fulfill the criteria of subsection (a)(3)(B) for terminating a child support obligation.[6]

Moreover, we cannot accept that there is sufficient evidence that Courtney was in fact self-supporting, or capable of self-support, which is an additional requirement for terminating a child support obligation under subsection (a)(3). The trial court relied upon the fact that Courtney had worked at two different places after graduating from high school in concluding that she had the capacity of self-support. We believe, however, that this does little more than establish that Courtney was physically capable of working. Except for an overlapping two-week period when she worked at both the barbershop and gym, she has never worked more than twenty hours per week. Her most lucrative job paid her $8 per hour, and there is no indication that the job came with any benefits. Extrapolated over a full year, working twenty hours per week at $8 per hour is approximately $8000. This is below the 2010 federal poverty guideline for one person, which is $10,830. *See* http://aspe.hhs.gov/poverty/10poverty.shtml (last revised Jan. 21, 2011). There is no evidence that Courtney possessed job skills that could lead to greater earnings. It also is very telling, we believe, that Father himself testified at the October hearing that he did not think Courtney was "fully" capable of supporting herself.[7] Tr. p. 31.

■ This case presents a scenario precisely indicating why the "automatic" age for emancipation is twenty-one, not eighteen, and why a parent seeking to terminate a child support obligation before the

---

6. We presume that at some point, a college would no longer consider a student to be "enrolled" if he or she repeatedly failed to complete any classes. Courtney had not reached that point with Ivy Tech.

7. Subsection (a)(3) of the emancipation statute provides the option of reducing, rather than terminating, a child support obligation if a child is partially, but not wholly, capable of supporting him- or herself. Father did not request a reduction in his support obligation, but a full termination of it.

age of twenty-one bears the burden of proving emancipation. Many persons in their late teens are still maturing. They may need substantial, continuing parental guidance and support as they begin navigating the "adult" world, when employment options, for a recent high school graduate with little or no work experience, often are limited to low-paying, low-benefit jobs. The public policy of this state clearly is to require continued payment of child support until the child no longer is in actual need of such support. *See Dunson,* 769 N.E.2d at 1124. We do not conclude that just because Courtney struggled in her first semester of college and managed to work part-time at low-paying jobs, that she was emancipated at any time before December 10, 2009. The trial court erred in concluding otherwise. We reverse the trial court's order emancipating Courtney as of September 23, 2009, and remand for recalculation of the amount of child support Father overpaid, using an emancipation date for Courtney of December 10, 2009.

## II. Post–Secondary Educational Expenses

■■■■ We now address Mother's contention that the trial court erred in absolving Father of any obligation to contribute towards the cost of Courtney's attendance at Ivy Tech. A child support order and an educational expense order are separate and distinct. *Knisely v. Forte,* 875 N.E.2d 335, 340 (Ind.Ct.App.2007). An order for the payment of post-secondary or college expenses may continue beyond the date of a child's emancipation. *See* I.C. § 31–16–6–6(a)(1). Educational support orders must take into account the child's aptitude and ability; the child's reasonable ability to contribute to educational expenses through work, loans, and obtaining other sources of financial aid reasonably available to the child and each parent; and the ability of each parent to meet these expenses. *Knisely,* 875 N.E.2d at 341 (citing I.C. § 31–16–6–2).

■■■■ We review a trial court's decision regarding the payment of post-secondary educational expenses for an abuse of discretion. *Snow v. Rincker,* 823 N.E.2d 1234, 1237 (Ind.Ct.App.2005), *trans. denied.* An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before the court, or the reasonable inferences drawn therefrom. *Id.* Expenses that may be included within a post-secondary education expense order are tuition, books, lab fees, supplies, student activity fees, room and board if the child is not living with the custodial parent, transportation or car expenses, clothing, entertainment, and incidental expenses. *See* Ind. Child Support G. 8(b). A child attending a commuter college, even one relatively near a custodial parent's home, is not required to live with that parent while attending college. *See Tew,* 924 N.E.2d at 1267.

We also reiterate that this case presents a situation in which there was a temporary, albeit brief, gap in Courtney's post-secondary education. This court has devised the following guidelines for determining whether "it is reasonable or unreasonable, equitable or inequitable, to require the parent or parents to contribute to the expenses of a once discontinued but now resumed higher education." *Thiele v. Thiele,* 479 N.E.2d 1324, 1329–30 (Ind.Ct. App.1985).

Among the facts which may be considered in making such a determination are—(1) the length of time elapsed between the interruption and resumption of the educational program; (2) the age of the child; (3) the financial ability of the parent or parents; (4) whether the

child and the parents intended to abandon permanently the program of higher education when withdrawing from it; (5) the reasonableness of the child's present desire and purpose in returning to an institution of higher learning; (6) the activities of the child, particularly in relation to employment or business during the hiatus; (7) other provisions made for the child by the parent or parents; (8) the station in life of the child and the parent or parents; (9) any other facts or circumstances reasonably related to the need of the child for such education, the ability of the parent or parents to provide such education, and the reasonableness or equity in requiring the parent or parents to provide educational expenses.

*Id.*

Here, although Courtney did not complete her first semester of classes, Father expressed hope at the October 2009 hearing that she would return to college. Additionally, although Father did testify at the October 2009 hearing that his income had decreased, he did not indicate that this would prevent him from contributing to Courtney's college education.[8] To the contrary, he expressly and under oath stated his willingness to contribute towards the cost of her post-secondary education if she did return to school. He also agreed, in response to a question from his attorney, that he was seeking to terminate his responsibility "[f]or college expenses, just for [Elizabeth], is that correct?" Tr. p. 33. To the extent Courtney may possibly be able to contribute to the cost of her education through employment, that factor may be justified in determining the amount that Father might contribute to her education; we do not believe it sup-

ports entirely relieving Father of the responsibility to contribute. Courtney also has a 100% tuition scholarship for Ivy Tech, which would greatly reduce the amount of money that Mother, Father, and Courtney all should have contribute to her education.

Furthermore, the time between interruption and resumption of Courtney's post-secondary education was very brief. There was scant indication, aside from one comment to Father, that she intended to permanently abandon that education, as she never un-enrolled from Ivy Tech and instead registered for 2010 spring semester classes. She was still very young, as opposed to someone in his or her mid–20s seeking contribution for college expenses after a long absence from school. Father contributed to the post-secondary education expenses of both of Courtney's older sisters, indicating that post-secondary education for his children is something that he generally supports. Mother and her current husband have contributed to Courtney's living expenses, including room and board and car expenses, since she went back to school.

We cannot find that the record supports any reasonable, equitable basis upon which to relieve Father of any and all obligation to assist Courtney in her post-secondary educational pursuits, especially given Father's willingness to assist that he expressed at the October hearing. Thus, we conclude the trial court abused its discretion in terminating Father's obligation to pay anything towards Courtney's post-secondary education expenses, and remand for the trial court to apportion those costs between Mother, Father, and Courtney.

---

8. We also note that with respect to post-secondary education expenses, the entire financial picture of all the parties may be considered. *See Schacht v. Schacht,* 892 N.E.2d 1271, 1276 (Ind.Ct.App.2008). This would justify exploration into Father's entire financial picture, including that of his current wife, not just his own income.

## III. Overpayment of Support Calculation

 Next, we address Mother's argument that the trial court erred in calculating the amount of child support that Father overpaid, and which Mother was required to refund to Father. Specifically, Father continued paying child support for both Elizabeth and Courtney until the February hearing, even though both were retroactively emancipated before that time. Mother contends the trial court erred in calculating Father's overpaid child support because it failed to take into account that she paid $42.50 per week towards Courtney's health insurance.[9]

In January 2008, when the trial court modified Father's child support obligation with respect to Elizabeth and Courtney, it found that the total weekly support obligation for both children and for both parents, after taking into account the $42.50 per week health insurance premium attributed to Mother, was $215.50. Of that amount, Father, as non-custodial parent and the higher earner, was to pay Mother $141.08 per week. This represented child support for Courtney only; Elizabeth, who was in college at the time, was accounted for by an additional $15.33 weekly payment from the post-secondary education worksheet.[10]

When, in its March 2010 order, the trial court calculated the amount of Father's child support overpayment, it expressly stated that it was going to make that computation using the January 2008 child support worksheet. In doing so, however, it did not include the $42.50 per week

health insurance premium in the total child support obligation, came up with a total weekly support obligation of $173.00, and assigned to Father $113.25 of that amount. The trial court then multiplied $113.25 times the number of weeks between the date of Elizabeth's emancipation and Courtney's emancipation, which it set at twenty-nine weeks, which equaled $3,284.25 of child support the trial court believed Father legitimately owed. Finding Father had paid $7,500.00 in child support since Elizabeth's emancipation, it found Father had overpaid in the amount of $4,465.75 ($7,500.00–$3,284.25). If the trial court had used the same amount of child support obligation as before—$141.08 per week—then the amount of child support Father would have been required to pay for twenty-nine weeks would have been $4,091.32, and Father's overpayment Mother had to refund would have been reduced to $3,408.68 ($7,500.00–$4,091.32).

We conclude the trial court clearly erred in its calculation of Father's child support overpayment. The January 2008 child support was a binding, final order, which Father never filed a petition to modify, aside from seeking emancipation of Elizabeth and Courtney. Father's March 2009 petition to emancipate Elizabeth did request a reduction in his child support obligation, but only to reflect that just Courtney was being supported. By excluding the health insurance cost from its calculation of child support that Father legitimately owed, the trial court improperly retroactively modified his support obligation. *See Becker v. Becker,* 902 N.E.2d

---

9. On remand, because we have adjusted the date of Courtney's emancipation, the trial court will have to recalculate the amount of Father's overpayment of child support. We are addressing this issue in order to provide guidance on remand in how to make that calculation.

10. Based on Father and Mother's combined income, and application of the Indiana child support schedule, $173 per week would be the amount of support owed for one child. The health insurance premium was added onto that to reach $215.50.

818, 820 (Ind.2009) (holding that generally, trial courts may not retroactively reduce a child support obligation, to date preceding petition to modify, after obligation has accrued).

Moreover, the mere fact that Elizabeth's health insurance cost was removed as of her emancipation, (for child support purposes if not in fact), did not alter this calculus. There was evidence presented that the health insurance premium, offered through Mother's current husband's employer, did not change based on the number of dependent children on the policy. Thus, there was no evidence that health insurance costs changed with Elizabeth's emancipation. When the trial court recalculates the amount of child support Father overpaid Mother, based on Courtney's emancipation date of December 10, 2009, it must utilize Father's child support obligation for Courtney as reflected in the January 2008 child support order.

■ Related to this issue, Mother contends the trial court erred in determining that Father was not liable for any payment of uninsured medical expenses incurred in 2009 for Elizabeth and Courtney. In the trial court's March 2010 order, it stated that Mother was responsible for the first $755.04 in uninsured medical expenses for 2009, pursuant to the six percent rule. See Child Supp. G. 7. This number apparently came from a child support order dating from 2005. As noted, Father's child support obligation was modified in January 2008. That order stated that Mother was responsible for the first $612.83 in uninsured medical expenses per year. Attached to the trial court's March

2010 order was the child support worksheet reflecting Father paying $113.25 per week in support for Courtney, as we have discussed, and which stated that Mother would be responsible for the first $539.76 in uninsured medical expenses.

As between these three figures, we again conclude that the trial court should have utilized the number from the January 2008 support order. That is the order that was in full effect until the date of Elizabeth's emancipation in March 2009. Mother submitted documentary evidence from her health insurance provider indicating that prior to March 3, 2009, Elizabeth incurred a total of $500.64 in medical expenses that were not paid by insurance.[11] On appeal, Mother does not seek reimbursement for any of Elizabeth's medical expenses incurred after that date, which were approximately $20,000. As for Courtney, one of Father's own exhibits, Exhibit N, similarly indicates that Courtney incurred medical expenses of at least $789 (before December 10, 2009) that were not paid by insurance.[12] This is a total of $1289.64, or above the six percent cutoff of $612.83 for which Mother was solely responsible, leaving $676.81 in uninsured medical expenses to be divided between Mother and Father. We remand for the trial court to enter an order to that effect.

### IV. Attorney Fees and Costs

■ Finally, we address Mother's claim that the trial court erred in ordering her to pay $5000.00 in attorney fees to Father. "Indiana follows the 'American Rule,' whereby parties are required to pay their own attorney fees absent an agreement between the parties, statutory au-

---

11. Mother's brief asserts that Elizabeth incurred $410.64 in uninsured medical expenses. We cannot harmonize that number with that reflected in Mother's Exhibit 10, which includes the printout from her health insurance provider.

12. Mother states in her brief that Courtney incurred $749 in uninsured medical expenses; again, this seems to be in direct conflict with the documentary evidence indicating $789 in such expenses.

thority, or other rule to the contrary." *Smyth v. Hester*, 901 N.E.2d 25, 32 (Ind. Ct.App.2009), *trans. denied.* Father contends that award was supported by Indiana Code Section 31–16–11–1, which permits the award of attorney fees in family law matters. That statute, however, requires the trial court to consider the parties' resources, their economic condition, their ability to engage in gainful employment, and other factors that bear on the award's reasonableness. *Bean v. Bean*, 902 N.E.2d 256, 266 (Ind.Ct.App. 2009). There is no indication that the trial court engaged in such consideration when it awarded attorney fees to Father.

■ Rather, it appears the trial court believed Mother's claims and arguments were frivolous. In its order, the trial court stated that Father "has been required to litigate this matter over a substantial period of time with multiple hearings in a situation where the children of the parties were clearly emancipated." App. p. 58. Under Indiana Code Section 34–52–1–1(b), a trial court may award attorney fees to a prevailing party if the other party "continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless," or if the other party "litigated the action in bad faith." In reviewing an award of attorney fees under this statute, we first review any factual findings made by the trial court for clear error. *Smyth*, 901 N.E.2d at 33. Next, we review de novo whether a claim is frivolous, unreasonable, or groundless. *Id.* Finally, if a statutory basis exists to award attorney fees, we review the trial court's ultimate decision to award fees, and the amount of those fees, for an abuse of discretion. *Id.* at 33–34.

Aside from the above-quoted language, the trial court made no factual findings

with respect to the merits of Mother's claims. And, reviewing the reasonableness of those claims de novo, it is obvious, after considering that we have ruled in Mother's favor on several issues on appeal, that those issues were not frivolous, unreasonable, or groundless. Father makes much on appeal of the fact that at the February 2010 hearing, Mother essentially conceded that Courtney was emancipated as of December 10, 2009, and claims that this unnecessarily prolonged the proceedings, implying that this concession could have been made earlier. This overlooks the fact that this concession, such as it may be, came about because Courtney moved out of Mother's home between the date of the October 2009 and February 2010 hearings. It also was not a concession to the date Father believed Courtney was emancipated, nor was it a concession that Father was absolved of responsibility to contribute to Courtney's post-secondary expenses.

The trial court also seemed to imply that Mother colluded with Courtney and Elizabeth to avoid appearing at the hearings, when it stated that Father "was required to engage in hearings necessary to secure the presence of the adult children of the parties to testify, despite the fact that they were subpoenaed by [Father] in an appropriate fashion." App. p. 58. This statement, however, is not accompanied by any express factual finding as to how Mother was to blame in this matter, and the record is largely devoid of any such evidence, aside from mere speculation. Regardless, even if there was some such evidence, both Courtney and Elizabeth did appear and testify at the February 2010 hearing, and any difficulty in securing their attendance appears to have been relatively minor and certainly not justification for an award of $5000.00 in attorney fees. We reverse that award.[13]

---

13. Father has also filed a motion for appellate attorney fees. Given the result of this appeal,

■ Finally, we address the trial court's decision to award $277 to Father, as compensation to his current wife to pay her expenses for traveling from Florida to Indiana to testify under Mother's subpoena. We cannot perceive a proper basis for this award. Witnesses in civil cases are entitled to fees as listed in Indiana Code Section 33–37–10–3, i.e. $5 per day, plus mileage for travel to the courthouse at the current rate paid to state officers. Moreover, Indiana Trial Rule 45(G) requires a subpoena to be served along with fees for mileage and one day's attendance in court, with certain exceptions not applicable here.

■ Courts lack inherent power to award costs to a party, in the absence of a statute so providing. *Calhoun v. Hammond*, 169 Ind.App. 39, 41, 345 N.E.2d 859, 860 (1976). With respect to witness fees, costs cannot be awarded in excess of those provided by statute. *Id.* at 43, 345 N.E.2d at 862. Additionally, a witness must make a personal demand for payment of his or her statutory witness fees. *See id.* at 45, 345 N.E.2d at 863. Here, there is (1) no evidence that Mother did not tender the statutory witness fees to Father's current wife when she issued the subpoena for her, and (2) even if such fees had not been tendered, it was for Father's current wife to seek collection of those fees, not Father. We also note that Father testified that he and his current wife's finances are kept separate. If that is the case, then it would be improper to award Father the costs of his current wife's travel to Indiana. We reverse the $277 award to Father for his current wife's travel expenses.

### Conclusion

We reverse the trial court's emancipation date for Courtney of September 23, 2009, and conclude she was emancipated no earlier than December 10, 2009. We remand for the trial court to recalculate the amount of child support Father has overpaid, and to apportion the payment of uninsured medical expenses incurred by Elizabeth and Courtney in 2009, in accordance with this opinion. We also remand for entry of a post-secondary education expense order as to Father. Finally, we reverse the award to Father of attorney fees and his current wife's travel expenses.

Reversed and remanded.

VAIDIK, J., concurs.

BAKER, J., concurs in part and dissents in part with opinion.

BAKER, Judge, dissenting in part.

I respectfully dissent from the majority's conclusions regarding the date of Courtney's emancipation and Father's obligation to contribute to Courtney's post-secondary educational expenses.

*Date of Emancipation*

First, as to the date of Courtney's emancipation, I observe that the relevant purpose of Indiana Code section 31–16–6–6(a)(3) is to ensure that children are cared for until they no longer require support. *Dunson v. Dunson*, 769 N.E.2d 1120, 1124 (Ind.2002). I can only assume that the General Assembly intended there to be an implicit requirement that parents and child(ren) act in good faith. Here, the trial court heard evidence that Courtney withdrew from all classes after only two weeks and later told Father that college was not for her and that she did not foresee returning to school. Having heard this evidence, the trial court must have concluded that Courtney's two weeks of classes did not constitute attending school in good faith during the preceding four months. I

we are denying this motion by separate order filed concurrently with this opinion.

believe that this evidence is sufficient to support the trial court's conclusion on this issue.

As to whether Courtney was still enrolled in Ivy Tech after withdrawing from all classes, I note that although the relevant statute does not define "enroll," this court has set forth its own definition of the term in this context: enrolled "means more than being involved in the application process; rather, it means that one has been accepted to the institution and is officially registered at the institution as a student." *Butrum,* 803 N.E.2d at 1145. While I do not quarrel with this definition of the term, I believe that under certain circumstances—such as those herein—it does not go far enough. Accepting such a broad definition of the term means that a student could conceivably be "enrolled" in a postsecondary educational institution in perpetuity without ever actually taking any classes.

As noted above, I believe that the General Assembly intends there to be a requirement that all parties act in good faith. Thus, I would add to the *Butrum* definition of enrolled as follows: enrolled, in the context of subsection (a)(3), means that one has been accepted to the institution, is officially registered at the institution as a student, and in good faith is attending or intends to attend the institution in the foreseeable future.

Here, the trial court heard testimony that Courtney dropped all of her classes after attending school for only two weeks. She then told her Father that college was not for her and that she did not foresee returning to school. Although Courtney re-enrolled in classes in January 2010 and was still taking those classes at the time of the hearing in February 2010, the trial court explicitly noted its skepticism that she would complete those classes. It is evident that the trial court assessed her

credibility and found it wanting, and I believe that we should not second-guess that assessment on appeal. Consequently, I would find that the trial court did not err by finding that Courtney was not enrolled in Ivy Tech on September 23, 2009.

Turning to whether Courtney is capable of supporting herself, the trial court heard evidence that Courtney maintained employment on weeknights and weekends during her last two years of high school. And during the summer following her graduation from high school, Courtney was employed by Big League Barbers and L.A. Fitness. Mother focuses on Courtney's alleged anxiety disorder, but failed to offer any expert evidence supporting that claim. Consequently, the trial court was free to discount the testimony to that effect. I believe that the result reached by the majority necessarily requires reweighing the evidence, and respectfully dissent from its conclusion on this issue. I would find that the evidence regarding Courtney's employment history supports the trial court's conclusion that she was capable of supporting herself through employment on September 23, 2009.

Inasmuch as I believe that the evidence supports the trial court's findings that on September 23, 2009, Courtney was at least eighteen years old, had not attended postsecondary classes in the previous four months and was not enrolled in a postsecondary institution, and was capable of supporting herself, I would find that the trial court did not err by finding her emancipated as of that date.

*Post–Secondary Educational Expenses*

Second, I respectfully dissent from the majority's conclusions regarding Father's responsibility to contribute towards Courtney's post-secondary educational expenses. Indiana Code section 31–16–6–2 provides that it is within the trial court's discretion to award educational support after taking

into account the following factors set forth in the statute:

(A) the child's aptitude and ability;

(B) the child's reasonable ability to contribute to educational expenses through:

(i) work;

(ii) obtaining loans;

(iii) obtaining other sources of financial aid reasonably available to the child and each parent; and

(C) the ability of each parent to meet these expenses.

I.C. § 31–16–6–2(a)(1).

Here, the trial court heard evidence that Courtney was able to work through her junior and senior years in high school while attending school full-time. She had received a 100% tuition scholarship. She had continued to work after high school, and held two jobs during the summer following her graduation.

Additionally, Father's income decreased significantly in 2009. In 2008, his gross income was $111,000. In 2009, Father, who is a trucker facing a significant decrease in available work and a threefold increase in the cost of fuel, had a gross income of $50,000 as of September 2009. Father also testified that Courtney told him, after withdrawing from all classes after two weeks, that college was not for her and she did not foresee returning to college.

All of this evidence is relevant to the above statutory factors. The trial court weighed the evidence, assessed the situation, and concluded that Father's obligation to contribute to Courtney's educational expenses was terminated. I believe that by reversing on this issue, the majority is necessarily reweighing the evidence. Consequently, I respectfully dissent and would affirm the trial court's ruling on this issue. As to the remaining issues—healthcare expenses and attorney fees—I fully concur with the majority.